UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| CHARGES MOUNTS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 7:21-CV-86-REW-CJS |
| v. | ) |
| | ) |
| 3M COMPANY, *et al.*, | ) OPINION & ORDER |
| | ) |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

**I.	Background**

This matter involves a mass tort action brought by hundreds of former coal miners and/or their spouses for personal injuries allegedly arising from the failure of respirators to protect the miners against exposure to coal, rock, and dust while working in the mines. *See generally* Compl. (DE 1-1 at 9–52). As a result of the allegedly defective respirators, the miners (or, representatively, their survivors) claim that they suffer from coal worker's pneumoconiosis ("CWP" or "black lung" disease), COPD, and other injuries. *See id.* ¶ 1. Defendants are manufacturers and sellers of the respirators, or as applicable, their corporate successors-in-interest. *See id.* ¶¶ 3, 10–11, 12, 18. Defendants 3M Company f/k/a Minnesota Mining and Manufacturing Company ("3M"), Mine Safety Appliances Company ("Mine Safety"), American Optical Corporation ("AOC"), Cabot Corporation ("Cabot"), Cabot CSC Corporation ("Cabot CSC"), Aearo LLC ("Aearo"), and Aearo Technologies, LLC ("Aearo Tech")[1] represent the "Manufacturing Defendants." *See id.* ¶ 11. The "Selling Defendants" consist of Defendants Mine Service Company, Inc. ("Mine Service"),

---

[1] While Aearo Tech is a named defendant in the action, Plaintiffs do not clearly identify it as a Manufacturing Defendant. However, subsequent filings confirm that Aearo Tech is a Manufacturing Defendant. *See, e.g.*, DE 1 (Notice of Removal) at 6 n.2.

1

Network Supply a/k/a/ Network Supply, Inc. a/k/a Roswell, Inc. ("Network Supply"), Regina Mine Supply, Inc. ("Regina Mine"), Carbon Mine Supply, LLC ("Carbon Mine"), M & M Mine Supply, Inc. ("M & M Mine"), and Kentucky Mine Supply Company ("Kentucky Mine"). *See id.* ¶ 18. Plaintiffs bring claims for strict liability, negligence, breach of implied warranty, punitive damages, and, as applicable for a given plaintiff, wrongful death against all defendants. *See id.* ¶¶ 19–35, 51–61. Plaintiffs separately allege intentional misrepresentation against the Manufacturing Defendants. *See id.* ¶¶ 36–46. Plaintiffs also argue that the Selling Defendants are not immune from liability under Kentucky's "middleman" statute. *See id.* ¶¶ 47–50.

Plaintiffs filed this action on September 29, 2021, in Pike Circuit Court. *See* Compl. Defendants later removed the action to this Court. *See* DE 1. After litigation over remand, the matter remains before the Court. *See* DE 42 (Sixth Circuit Order).

On May 30, 2023, the Court entered a scheduling order, directing Plaintiffs to answer a set of targeted interrogatories and produce certain documents within 60 days. *See* DE 49 (Scheduling Order). The Court also warned Plaintiffs that failure to comply with those deadlines would result in the dismissal of their claims without prejudice. *See id.* at 3. At that point, Plaintiffs would have an additional 60 days to comply, and if they failed to do so, the Court would dismiss their claims with prejudice. *See id.* The first 60 days came and went with no compliance from any plaintiff. *See* DE 54 (Order of Dismissal without Prejudice) at 1. At that time, the Court dismissed Plaintiffs' claims without prejudice and again warned Plaintiffs that if they failed to comply with the Scheduling Order by September 29, 2023, the Court would dismiss their claims with prejudice in a final order. *See id.* at 1–2.

The parties have since filed various motions, notices, and status reports in the record consequential to the Court's Scheduling Order. The Court will address each set of filings as

grouped and sequenced most logically. This behemoth, a structure chosen by Plaintiffs' original strategies, turns but slowly.

**II.     Motions to Reinstate and Sever Claims, for Leave to File First Amended Complaints**

By September 29, 2023, Plaintiffs filed notices in the record indicating that they had answered the interrogatories in compliance with the Scheduling Order. *See* DE 65 (Notice of Compliance); DE 70 (Certificate of Service); DE 71 (Certificate of Service). The plaintiffs (by then) represented by Michael Martin[2] (the "Martin Plaintiffs") move to reinstate their claims and sever their claims into separate individual actions. *See* DE 56 (Pinson Motion); DE 59 (Page Motion); DE 62 (Gayheart Motion); DE 68 (A. Hall Motion). The Martin Plaintiffs also move for leave to file first amended complaints in light of their severance requests. *See* DE 57 (Pinson Motion); DE 60 (Page Motion); DE 63 (Gayheart Motion); DE 69 (A. Hall Motion).

In response, Defendants agree that the Martin Plaintiffs provided answers to some of the interrogatories but challenge the sufficiency of those interrogatories. *See* DE 73 (3M Status Report) at 1–2; DE 76[3] (Mine Safety Response); DE 77 (Mine Safety Response); DE 78 (3M Response) at 1–2; DE 79 (AOC, Cabot CSC, and Aearo Tech Response). Defendants further note that, as of the deadline, none of the plaintiffs had produced the full documents identified in the Court's Scheduling Order. *See* DE 73 at 1; DE 76; DE 77; DE 78 at 2; DE 79. Because Plaintiffs

---

[2] While Glenn Martin Hammond has withdrawn as counsel for the majority of the plaintiffs in this action, confusion still remains regarding whether he withdrew his representation for five sets of plaintiffs. *See* DE 137 (Hammond Withdrawal Order). He has not filed anything substantive in the record since September 28, 2023. *See* DE 65. Since that time, Martin and Brian Vines have exclusively submitted filings on behalf of those plaintiffs. Therefore, for purposes of this motion, the Court will assume Martin is the only attorney representing the Pinson, Page, Gayheart, and A. Hall plaintiffs, and Vines is the only attorney representing the J. Miller plaintiffs.

[3] The briefings of the parties and the arguments raised in those filings are nearly identical as to each individual Martin Plaintiff. Therefore, the Court will only cite to a representative response or reply in lieu of a swath of record citations for ease of reference.

3

did not fully or timely comply with the Scheduling Order, Defendants request (in a status report and not in a formal motion, by operation of the prior rubric) that the Court dismiss all plaintiffs' claims with prejudice. *See* DE 73 at 2. The Martin Plaintiffs maintain that they inadvertently failed to produce the documents because counsel was expecting to receive requests for production and authorization forms from Defendants. *See* DE 74 (Response to Status Report) at 2–4; DE 92 (Reply) at 2, 4–5. Now, the Martin Plaintiffs represent that they have produced, or are in the process of producing, the identified documents *See* DE 92-1 (Exhibit A); DE 92-2 (Exhibit B); DE 75 (3M Reply) at 3–4.

To fairly process the compliance issues, the Court considers its prior orders and the full case history. In determining if dismissal is an appropriate sanction for the failure to comply with a discovery obligation[4] or other court order[5], courts consider the following factors: (1) whether the plaintiff's failure to comply is "due to willfulness, bad faith, or fault;" (2) whether "the adversary was prejudiced" by the plaintiff's dilatory conduct; (3) whether the plaintiff "was warned that failure to cooperate could lead to dismissal;" and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered." *Mager v. Wisconsin Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019). A plaintiff acts with the requisite willfulness, bad faith, or fault upon a showing that his conduct "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001) (citation and quotation marks omitted). Still, dismissal is only proper upon "a clear record of delay or contumacious conduct." *Freeland v. Amigo*, 103 F.3d 1271, 1277

---

[4] Rule 37(b)(2) provides, "If a party . . fails to obey an order to provide or permit discovery, . . . the court . . . may . . . dismiss[] the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

[5] Pursuant to Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

(6th Cir. 1997). The Court is well aware of the staggered system it imposed and the efforts to spur efficiencies in a case where few are readily apparent.

For the first factor, the Court does not find that the record contains sufficient indication of the Martin Plaintiffs' intent to thwart proceedings or their reckless disregard for the impact of the untimely disclosure on the proceedings before this Court. First, the initial 60-day delay is seemingly a result of confusion over the legal representation of certain plaintiffs coupled with the enduring silence of former counsel. *See* DE 74 at 2 ("While the cases were under the control of Glenn Hammond, they were dismissed."); *id.* at 4 ("Plaintiffs' counsel attempted to contact Mr. Hammond about the four Plaintiffs who discharged Mr. Hammond, but Mr. Hammond did not respond."); *id.* at 5 (". . . Mr. Hammond refuses to communicate with counsel . . ."); DE 55 (Martin Notice of Appearance). Second, the additional delay in compliance resulted from counsel's confusion over the mechanics of the production. *See* DE 74 at 2–4; DE 92 at 2, 4–5. By all accounts, the Martin Plaintiffs began producing documents upon counsel's realization that formal requests for production and authorization forms were not prerequisites to production. *See id.*; DE 75 at 3–4. At bottom, the delays were ultimately a product of counsel errors: inaction by former counsel and misunderstanding by current counsel. The Court, preferential to a merits result, is "extremely reluctant to [dismiss] a case merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997) (citation, quotation marks, and ellipses omitted); *see also Mager*, 924 F.3d at 838 ("[D]ismissal is usually inappropriate where the neglect is solely the fault of the attorney[.]") (citation and quotation marks omitted). Absent any clear record of contumacious conduct or delay and given the lack of fault attributable to the Martin Plaintiffs themselves, the first factor counsels heavily against dismissal with prejudice.

The second factor also weighs against dismissal with prejudice. After current counsel was alerted to their mistake, the Martin Plaintiffs initiated the production of the documents within nine days. *See* DE 74 at 2; DE 92 at 2. A mere nine-day delay is not substantial enough to prejudice Defendants, especially in the early phases of discovery and well-before the deadline for statute of limitations discovery and briefing. *See* DE 49.

As for the third and fourth factors, both slightly favor dismissal with prejudice. The Court warned the Martin Plaintiffs in its Scheduling Order, *see* DE 49, and its subsequent Order of Dismissal without Prejudice, *see* DE 54, that failure to timely comply with the dictates of those orders could result in dismissal with prejudice. The Court also first imposed the less drastic sanction of dismissal without prejudice. *See* DE 54.

However, altogether, the balance of factors weighs against dismissal with prejudice, considering the nature of counsel's errors and the reasonable steps that the Martin Plaintiffs' have taken to comply with the Scheduling Order following an initial delay. Moreover, dismissal is a harsh sanction of last resort. *See Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) ("The dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff.") (citation and quotation marks omitted); *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994) ("Dismissal is the sanction of last resort."). Really, the Court intended the Scheduling Order and the Order of Dismissal without Prejudice to spur action in the case and facilitate initial discovery. That intention has come to fruition, if imperfectly. Accordingly, the Court finds that reinstating the claims of the Martin Plaintiffs is appropriate; dismissal of those claims with prejudice is not.

The Court therefore **GRANTS DE 56, DE 59, DE 62,** and **DE 68** to the extent the motions seek to reinstate the claims of the Martin Plaintiffs. As for the sufficiency of the Martin Plaintiffs' discovery responses, the parties must make every effort to resolve disputes between themselves in good faith per Local Rule 37.1 before requesting intervention from this Court. Only if the parties are unable to reach a resolution may they seek relief through a properly filed Rule 37 motion, and then only per the proper mechanics as detailed in the applicable reference to a Magistrate Judge.

However, the Court **DENIES DE 56, DE 59, DE 62,** and **DE 68** to the extent the motions seek to sever the claims of the Martin Plaintiffs. The Martin Plaintiffs seek to sever their claims because the circumstances of each coal miner's employment, use of the respirators, and medical conditions "vary considerably" and are "unique" to each miner. *See* DE 56 at 2. Defendants largely do not oppose severance but ask that the claims remain subject to coordinated management by the Court, including through a discovery plan. *See* DE 78 at 2–3; DE 79.

"[T]he court may at any time, on just terms, add or drop a party," or "sever any claim against a party." Fed. R. Civ. P. 21. The determination of whether to sever a party or claim is within the broad discretion of the district court. *See Thompson Thrift Constr., Inc. v. Hyman Plumbing Co.*, Civil Action No. 5:13-050-DCR, 2013 WL 3566353, at *1 (E.D. Ky. July 11, 2013) ("[T]he determination of whether claims should be severed is a discretionary one."); 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1689 (3d ed.). ("[Q]uestions of severance are addressed to the broad discretion of the district court."). The Court should deny a motion to sever if severance will "result in delay, inconvenience, or added expense to the parties." *Thompson*, 2013 WL 3566353, at *2.

Relying on its broad discretion in making severance determinations, the Court declines to sever the claims of the Martin Plaintiffs at this time. The need to promote judicial efficiency and

7

prevent further delay and inconvenience warrant this result. In an action involving hundreds of plaintiffs with overlapping claims consisting of similar underlying allegations against the same set of defendants, separate actions would certainly create duplicative discovery and legal briefing. Such an arrangement is an ineffective use of judicial resources. Therefore, the claims of all plaintiffs, for now at least, will persist under the umbrella of one action. *See Burton v. Zwicker & Assocs., PSC,* CIVIL ACTION NO.: 10-227-WOB-JGW, 2011 WL 13156939, at *4 (E.D. Ky. Jan. 14, 2011) ("Importantly, judicial economy and efficiency are best furthered by having all of Plaintiffs' claims resolved in one action. Severance would lead to quintupling the number of trials, which would be an inefficient usage of the Court's resources, especially since all Plaintiffs share at least some of the same causes of action against the same Defendant.") (Wehrman, Mag. J.).

The Court further notes that Plaintiffs all chose to join under one complaint, the ill-advised verbiage of which ultimately allowed 3M to pull the entire raft to federal court. Plaintiffs avoided costs and pursued perceived benefits from joining together, and 3M took advantage of the posture to effect removal. The Court will coordinate the discovery and motion practice in and under the originating case. If there are matters to be tried, the Court may sever trials (or parts of trials) in the way that makes the most overall sense and best contributes to overall progress. Such steps are to be determined, but the Court will not sever at this point. Nothing about the case at this juncture, which originates in claimed product and damage/causation commonality, convinces the Court that post-removal atomization into (potentially) hundreds of distinct cases is justified or warranted.

Since the motions for leave to file first amended complaints are ultimately contingent on the Martin Plaintiffs' request to sever their claims into separate actions, the Court **DENIES DE 57, DE 60, DE 63,** and **DE 69**. Plaintiffs may specify their factual particulars in discovery.

**III.     Motions for Extension of Time**

The WT&P Plaintiffs[6] request an extension of time to comply with the Court's Scheduling Order due to changes in counsel and the number of plaintiffs with which counsel must coordinate to collect outstanding information. *See* DE 104 (Motion for Extension) at 1–2. Defendants oppose the extension, arguing that the WT&P Plaintiffs cannot justify their request under either Rule 16's good cause standard or Rule 6's excusable neglect standard. *See* DE 106 (3M Response) at 4–11. The WT&P Plaintiffs respond that they immediately made efforts to comply with the Court's Scheduling Order upon learning of the delays caused by their former counsel. *See* DE 116 (Reply) at 1, 4.

"[W]hether Rule 6's 'excusable neglect' standard or Rule 16's 'good cause' standard applies when a party files a motion after the scheduling order deadline . . . is a source of ambiguity" in the Sixth Circuit. *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 240–41 (E.D. Ky. 2018) (collecting cases). "In short, the relationship between Rule 16 and Rule 6 is muddled." *Id.* at 241.

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . Another relevant consideration is possible prejudice to the party opposing the modification." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (citations and quotation marks omitted).

Under Rule 6(b), "the court may, for good cause," grant an extension of time for motions made after the deadline "if the party failed to act because of excusable neglect." Fed. R. Civ. P.

---

[6] Throughout their filings, the parties call these plaintiffs (i.e., the non-Martin, non-Vine Plaintiffs) the "Hammond Plaintiffs" in reference to former counsel. However, Whiteford, Taylor & Preston, LLP and Peterson Law Office, PLLC now represent this set of plaintiffs; therefore, the Court will now refer to these plaintiffs as the "WT&P Plaintiffs" for accuracy.

9

6(b)(1)(B). "Neglect exists where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005). To determine if neglect is excusable, courts consider the following factors:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266–67 (6th Cir. 2009). Yet, excusable neglect is "a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.*

The Court finds that the WT&P Plaintiffs have (situationally, and barely) satisfied both the Rule 16 good cause and Rule 6 excusable neglect standards. Although the former counsel of the WT&P Plaintiffs certainly lacked diligence in failing to timely produce the documents identified in the Scheduling Order—due to no fault of the plaintiffs themselves—present counsel has consistently shown an apparent good faith effort to comply with pending requests since their appearance. *See, e.g.,* DE 120 (Notice of Service); DE 121 (Status Report); DE 122 (Notice of Service); DE 123 (Notice of Service). Despite this diligence, counsel has faced obstacles to obtaining the necessary information from former counsel, circumstances beyond the control of the WT&P Plaintiffs and their current attorneys. *See* DE 121 at 2. Understandably, a representation of this scale—after a seemingly unanticipated change in counsel—inherently comes with difficulties in initiating and maintaining communications with the many plaintiffs involved. *See id.* At this stage, these barriers constitutes good cause under Rule 16. While the Court acknowledges that the WT&P Plaintiffs' delay (a span of approximately three months between the

10

deadline and the motion) is not insignificant, the prejudice to Defendants is limited at this juncture, when discovery remains in its preliminary stages. The road will be long in this case.

Similarly, and for the same reasons, the WT&P Plaintiffs' have made the necessary showings of good cause and excusable neglect under Rule 6. Former counsel was neglectful in failing to produce the documents identified in the Court's Scheduling Order by the deadline. The failure was a careless, or worse, mistake to the detriment of his many clients. Overall, the balance of factors renders the neglect excusable on these facts. As discussed, during this early phase of discovery, the length of delay does not pose intolerable prejudice to Defendants or negatively impact the Court's proceedings to an insurmountable degree. While the delays in communication between current counsel and the WT&P Plaintiffs is generally within their control, the sheer number of plaintiffs, in conjunction with the bumpy transition in counsel, creates complications atypical of most actions. Given these unique circumstances, some delay is expected. Here, the primary reason for delay is the culmination of the persistent inattention and sloppiness of former counsel, a mid-game overhaul of the counsel line-up, and continuous issues in client information from former counsel—factors beyond the control of the WT&P Plaintiffs and, mostly, their current counsel. Since their appearance, the WT&P Plaintiffs and their counsel have acted in good faith to produce the necessary documents, steadily working to respond to outstanding requests. *See* DE 120; DE 121; DE 122; DE 123. Simply, the Court will not penalize the WT&P Plaintiffs for the errors of former counsel by completely foreclosing their avenues for relief. *See Adrianne N. v. Comm'r of Soc. Sec.*, No. 23-12791, 2024 WL 3223915, at *1 (E.D. Mich. May 8, 2024) ("The Court will not punish Plaintiff for counsel's mistake.") (Ivy, Mag. J.).

The Court accordingly **GRANTS** DE 104.[7] If the WT&P Plaintiffs seek to reinstate some or all of their dismissed claims, the WT&P Plaintiffs **SHALL** answer the interrogatories and produce the documents identified in the Court's Scheduling Order **by no later than October 31, 2024,** to the extent they have not already done so. On that date, the WT&P Plaintiffs **SHALL FILE** in the record a proper motion for reinstatement, identifying each specific plaintiff that has fully answered the interrogatories and produced the requisite documents in compliance with the Court's Scheduling Order. The WT&P Plaintiffs may *only* seek reinstatement of those complying plaintiffs and must do so in a single motion.

Again, as with the Martin Plaintiffs, to the extent Defendants challenge the sufficiency of the WT&P Plaintiffs' discovery responses, the parties must make every effort to resolve disputes between themselves in good faith per Local Rule 37.1 before requesting intervention from this Court. Only if the parties are unable to reach a resolution, and have followed proper pre-motion mechanics, may they seek relief through a properly filed Rule 37 motion.

In its "substantial discretion" to effectively manage its docket, the Court will dismiss with prejudice the claims of any plaintiff that has not complied (i.e., that is not listed by WT&P as compliant) by October 31, 2024. *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (citation and quotation marks omitted). The Court is conscious of the logistical intricacies in representing hundreds of plaintiffs, particularly given the enduring issues with the

---

[7] To the extent Defendants request that the Court dismiss the claims of the WT&P Plaintiffs with prejudice, the Court incorporates its previous analysis declining to dismiss the claims of the Martin Plaintiffs. Although the length of delay created by the WT&P Plaintiffs is greater and therefore poses greater risk of prejudice to Defendants, the Court reiterates that the infancy of discovery assuages the prejudice. Likewise, since the WT&P Plaintiffs retained new counsel, these plaintiffs have regularly attempted to address the pending discovery requests pursuant to the Scheduling Order. That is, the record does not evince a "clear" pattern "of delay or contumacious conduct." *Freeland*, 103 F.3d at 1277. Without such a pattern and mindful that the delays here are primarily due to the negligence and unhelpful influence of former counsel, the Court refrains from dismissing the claims of the WT&P Plaintiffs with prejudice.

former counsel. However, as the masters of their own case, Plaintiffs cannot remain inactive. At a certain point, the perpetual delay escalates the prejudice to the opposing parties to an intolerable level.

Plaintiffs Jeff and Kathryn Miller, the only set of plaintiffs now represented by Brian Vines, also timely moved for an extension of time to respond to discovery requests in compliance with the Scheduling Order. *See* DE 66 (J. Miller Motion for Extension). As grounds, the J. Miller Plaintiffs (formerly represented by Hammond) state that they only retained Vines less than two weeks before the Scheduling Order compliance deadline. *See id.* No defendant opposed the motion. The J. Miller Plaintiffs subsequently filed their Certificate of Service in the record. *See* DE 89 (Certificate of Service). Finding good cause and given the lack of defense objection, the Court **GRANTS DE 66**. *See* Local Rule 7.1(c) ("Failure to timely respond to a motion may be grounds for granting the motion."). The J. Miller Plaintiffs' responses were timely.

IV. **Motion to Clarify**

Defendants subsequently filed a motion to clarify whether and when to proceed with statute of limitations discovery. *See* DE 99 (3M Motion to Clarify); DE 100 (Mine Safety Motion for Joinder); DE 113 (AOC, Cabot CSC, and Aearo Tech Joinder). The Court **GRANTS DE 99** and **DE 100** to the extent Defendants seek clarification as to the case schedule for statute of limitations discovery. However, to the extent Defendants seek to dismiss the plaintiffs' claims with prejudice, the Court **DENIES DE 99** and **DE 100** for the reasons already given. The parties appear to have conducted at least some discovery regarding the statute of limitations in the interim. *See* DE 129 (Motion for Summary Judgment). The parties (meaning, all active and remaining litigants in the case) **SHALL** file a joint status report detailing the current status of statute of limitations discovery, and a joint proposed plan for phased discovery and steps in litigation, by **no later than October**

13

**22, 2024.** At that point, the Court will conduct a scheduling hearing and map out the schedule in the case. Discovery on limitations may certainly proceed.

V.  **Conclusion**

Therefore, in sum, the Court hereby **ORDERS:**

1. The Court **GRANTS in part** and **DENIES in part** DE 56, DE 59, DE 62, and DE 68;

2. The Court **DENIES** DE 57, DE 60, DE 63, and DE 69;

3. The Court **GRANTS** DE 104. Plaintiffs **SHALL** fully comply with Court's Scheduling Order **by no later than October 31, 2024,** to the extent that they have not already done so. On that date, the WT&P Plaintiffs also **SHALL FILE** in the record a proper motion for reinstatement, identifying each specific plaintiff that is in full compliance with the Court's Scheduling Order;

4. The Court **GRANTS** DE 66; and

5. The Court **GRANTS in part** and **DENIES in part** DE 99 and DE 100. The parties **SHALL** file a joint status report as specified by **no later than October 22, 2024**.

This the 26th day of September, 2024.



Signed By:
*Robert E. Wier*
United States District Judge

14